FILED

10 OCT -5 PM 4: 27

PATRICIA A. NOLAND
CLERK, SUPERIOR COURT
BY_____
        DEPUTY
Michael Muske

1   Merle Joy Turchik, SBA 011130
    Mary Judge Ryan, SBA 011692
2   **RYAN TURCHIK P.C.**
    300 North Main Ave., Suite 106
3   Tucson, AZ 85701
    Telephone: (520) 882-7070
4   Facsimile: (520) 882-7091
5   Email: merle@ryanturchik.com
    mary@ryanturchik.com
6
7   J. Nelson Thomas, N.Y. State Bar 2579159 (*pro hac vice admission anticipated* )
    Annette Gifford, N.Y. State Bar # 4105870 (*pro hac vice admission anticipated*)
8   Sarah Cressman, N.Y. State Bar # 4014379 (*pro hac vice admission anticipated*)
    **THOMAS & SOLOMON LLP**
9   693 East Avenue
    Rochester, New York 14607
10  Telephone: (585) 272-0540
    Facsimile: (585) 272-0574
11  Email: nthomas@theemploymentattorneys.com
    agifford@theemploymentattorneys.com
12  scressman@theemploymentattorneys.com
13
    Attorneys for: **Plaintiffs**
14

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| FRANK ACUNA, DEE ADAMS, ALEXIS LONG AND RICHARD MCKEEMAN, *on behalf of themselves and all other employees similarly situated,* | Case No.: **C20107854** |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| v. | Ted B. Borek |
| SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI WESTERN MARKET SUPPORT CENTER, L.P. a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC., JANE D. JONES, GWEN PETTEWAY, THOMAS RYAN, ABC CORPS 1-10; JOHN and JANE DOES 1-10; | |
| **Defendants.** | |

1

**CLASS ACTION COMPLAINT**

I.   **INTRODUCTION AND PROCEDURAL HISTORY**

1.   This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to plaintiffs individually, as well as all other employees similarly situated, to recover unpaid wages owed to employees of Defendants under the laws of Arizona and common law.

2.   On December 12, 2006, Service Corporation International ("SCI"), a named defendant in this action, was named in a complaint filed in the Western District of Pennsylvania ("*Prise*"). That complaint also named Alderwoods Group, Inc. ("Alderwoods") as a defendant in that action.

3.   Prior to the filing of the *Prise* complaint, SCI had acquired Alderwoods and Alderwoods had become SCI's wholly-owned subsidiary. After the merger, SCI continued to operate the vast majority of both its own funeral homes and those of Alderwoods.

4.   The *Prise* complaint was filed as a class and collective action alleging, *inter alia*, that employees who worked at defendants' funeral home locations were not properly paid for all the time they worked for defendants. It asserted violations of both the Fair Labor Standards Act ("FLSA") and state wage and hour laws.

5.   The employees (whether they worked only at an Alderwoods location that became an SCI location, or at any other SCI location) shared a number of factual similarities: they suffered similar pay violations; SCI and/or its agents were their joint employers; SCI was liable for the violations of the entities it had acquired.

6.   Because of the overlapping legal liability of defendants, as well as the overlapping factual issues in the matter, plaintiffs believed it was legally appropriate and in the interests of judicial efficiency for defendants to be named in a common action.

7.   The Court in the Western District of Pennsylvania conditionally certified an FLSA class of employees and directed that notice be sent to those individuals who worked at an Alderwoods location.

8.     In response to that notice, hundreds of current and former employees opted-in to the Pennsylvania action.

9.     On or about June 8, 2007, the Court in the Western District of Pennsylvania declined to exercise supplemental jurisdiction over any of the state law claims alleged in that action.  Therefore, on or about July 9, 2007, the employees of SCI and Alderwoods reasserted their state law claims in a Class Action Complaint filed in the Superior Court of the State of California for the County of Alameda, Case No. RG 07334643 (the "Combined State Law Action").

10.     Subsequently, the Court in the Western District of Pennsylvania determined it would only hear claims on behalf of employees who worked only for Alderwoods, and that claims of employees who had worked only at other SCI locations should be heard in a separate action.

11.     Therefore, based on defendants' position that resulted in that ruling, the Combined State Law Action was voluntarily dismissed so that the state law claims of the employees who worked at locations managed by Alderwoods could be heard separately from those who worked at other SCI locations.

12.     After the voluntary dismissal of the Combined Sate Law Action, a separate action was re-filed on behalf of SCI employees only on December 5, 2007 in the Superior Court of the State of California for the County of Alameda, Case No. RG 07359593 (the "SCI State Law Action").  On February 28, 2008, defendants removed the SCI State Law Action to the United States District Court for the Northern District of California, Case No. CV-08-1190 SI.

13.     The SCI State Law Action included the state law claims of employees in every state where SCI does business, including Arizona.

14.     On July 22, 2010, the United States District Court for the Northern District of California granted the parties' Stipulation and Order dismissing without prejudice, effective 45 days from the date of the Order, those claims asserted in Plaintiffs' Second Amended Complaint on which Plaintiffs have not moved for certification in their Motion for Class Certification filed

Ryan Turchik P.C.

on June 18, 2010, including the state law claims of employees in Arizona. (Dkt. No. 317).

15.     The dismissal without prejudice of the state law claims of employees in Arizona became effective on September 5, 2010.

16.     The instant action was filed within 30 days of the effective date of the dismissal without prejudice of the Arizona state law claims asserted in the SCI State Law Action by the United States District Court for the Northern District of California.

17.     Some or all of the plaintiffs' claims asserted in this action are subject to tolling, including, but not limited to, a tolling order reflected at *Prise* docket entry no. 108 W.D. Pa. Civil Action No. 06-1641, tolling pursuant to 28 U.S.C. §1367(d), and applicable state law tolling provisions.

## II.     JURISDICTION AND VENUE

18.     Venue is proper in Pima County under A.R.S. § 12-401.

19.     This Court has jurisdiction over defendants because defendants conduct business in this State.

20.     Venue is also proper in Pima County because SCI owns and operates, directly or indirectly, one or more business locations in Pima County, including the following: East Lawn Palms Cemetery, 5801 East Grant Road #C, Tucson, AZ 85712; East Lawn Palms Mortuary, 5801 East Grant Road #C, Tucson, AZ 85712; Heather Mortuary & Chapel, 1040 North Columbus Boulevard, Tucson, AZ 85711; Desert Rose Cremation & Burial, 2750 South 4th Avenue, Suite #106, South Tucson, AZ 85713; South Lawn Cemetery, 5401 Park Avenue, Tucson, AZ 85706.

## III.     PARTIES

### A.     Plaintiffs

21.     Plaintiffs Frank Acuna, Dee Adams, and Alexis Long are residents of the state of Arizona. Mr. Acuna resides in Yuma County, Arizona, Ms. Adams resides in Pima County, Arizona, and Ms. Long resides in Maricopa County, Arizona.  Mr. McKeeman is a former resident of Pima County, Arizona, currently residing in Greenville County, South Carolina.

22.    The Class Members are those employees of Defendants who were suffered or permitted to work by Defendants and not paid their regular or statutorily required rate of pay for all hours worked.

23.    The class (hereinafter referred to as "Class Members") is defined as those employees who fall within one of the following classes:

**CLASS I (Community Work Policy):**

**Subclass 1:**   All current and former hourly paid employees of Defendants who worked as Funeral Directors, Embalmers or Family Service Counselors at an SCI location prior to July 2007 and who were encouraged or required to perform community work so as to increase revenue for Defendants but were not compensated for their time spent engaging community work outside regular work hours.

**Subclass 2:**   All current and former hourly paid employees of Defendants who worked as Funeral Directors, Embalmers or Family Service Counselors at an SCI location since July 2007 and who were encouraged or required to perform community work so as to increase revenue for Defendants but were not compensated for their time spent engaging in non-company sponsored community work that occurred outside regular work hours and off-site.

**CLASS II (On Call Pay Policy):**

**Subclass 1:**   All current and former hourly paid employees of Defendants who were suffered or permitted to perform work by handling calls and other work related issues after normal business hours but were not compensated for all work performed.

**Subclass 2:**   All current and former hourly paid employees of Defendants who performed removals while on-call but were not compensated for the time in between taking the call and arriving at the funeral home to pick up the company car to go to the removal site.

**CLASS III (Meal Break Policy):**

All current and former hourly paid employees of Defendants who were subjected to Defendants' policy of not ensuring all promised breaks were taken and that employees were completely relieved of all duties during that time.

**CLASS IV (Unrecorded Work Time Policy):**

All current and former hourly paid employees of Defendants who were

suffered or permitted to perform work while off the clock without compensation.

### B.    Defendants

24.    Defendants SCI, SCI Funeral and Cemetery Purchasing Cooperative, Inc. (the "SCI Cooperative") and SCI Western Market Support Center, L.P. a/k/a SCI Western Market Support Center, Inc. ("SCI Western"), are enterprises engaged in interstate commerce with an annual gross volume of sales not less than $500,000.

25.    ABC Corps. 1-10 and John and Jane Does 1-10 are fictitiously-identified Defendants whose true names and legal capacities are presently unknown. Leave of Court is requested to substitute the true names of such Defendants when discovered.

*SCI Western is Liable to Class Members*

26.    SCI Western is a limited partnership or corporation which is owned, directly or indirectly, by SCI.

27.    SCI Western is one of three regional SCI Support Centers that provide human resources services and support for SCI funeral home locations throughout the country. The other two regional Support Centers are SCI Eastern Market Support Center, L.P. and SCI Houston Market Support Center, L.P.

28.    The primary functions of the SCI Support Centers are to help facilitate the execution of corporate strategies, coordinate communications between the field and corporate offices, and serve as liaisons for the implementation of policies and procedures.

29.    The SCI Support Centers provide day-to-day human resources services and support for individual locations, including all executive, management, administrative, accounting, data processing, and human resources services for defendants' locations.

30.    On-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with the SCI Support Centers.

31.    Each SCI Support Center has an ownership interest in the SCI Cooperative and together the SCI Support Centers collectively own a majority of the SCI Cooperative.

32.    The SCI Support Centers, through their controlling interest in the SCI Cooperative, provide "Dignity University training programs" by which defendants ensure

uniform services at their nationwide locations, publish and maintain the weekly newsletter "Frontline," and the "Global Village" intranet site, through which defendants communicate with their nationwide employees, and administer benefit plans for employees and contract with third-party benefit providers to respond to questions related to day-to-day benefits services.

33.     Additionally, the SCI Support Centers, through their controlling interest in the SCI Cooperative, maintain a payroll department and database which centralize information regarding Class Members, including employment records and payroll information.

34.     SCI and the entities it owns, directly or indirectly, including the SCI Support Centers, employ a single line management model in an effort to streamline the organization and ensure that operational efficiencies are achieved throughout the SCI network.

35.     The funeral home locations that SCI owns, directly or indirectly, are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles.

36.     Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, are actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

37.     Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

38.     Upon information and belief, the SCI Support Centers, due in part to their role of providing all human resources services for defendants' locations, in concert with others, actively ensure defendants' compliance or non-compliance with the state and common laws asserted in this action.

39.    Upon information and belief, the SCI Support Centers, in concert with others, play a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

40.    Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set employees' schedules, hours and standard benefit levels.

41.    Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions that set standard pay scales.

42.    Upon information and belief, the SCI Support Centers, in concert with others, determine and draft policies, answer questions regarding human resources issues and policies, resolve issues regarding policies and their application, counsel locations on human resources issues, and communicate with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

43.    Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, provide employees with information regarding benefit plans and providers, oversee the implementation and execution of benefit plans, retain ultimate authority for providing information and responding to questions regarding the benefit plans, maintain records regarding the benefit plans, make determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and are responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

44.    Upon information and belief, the SCI Support Centers, in concert with others, have the authority to, and do, through their agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

45.    Upon information and belief, the SCI Support Centers' primary function of facilitating the execution of corporate strategies includes maintaining and directing a single, integrated set of operations across the SCI network.

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701
(520) 882-7070

8

46.    Upon information and belief, the SCI Support Centers are responsible for, and subject to, centralized management directions and decisions.

47.    The SCI Support Centers are owned, directly or indirectly, by defendant SCI. Additionally, SCI maintains an ownership interest, directly or indirectly, in the SCI Cooperative that is owned by the SCI Support Centers.

48.    Upon information and belief, the SCI Support Centers are part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner. This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

49.    Because the SCI Support Centers have authority to hire or fire employees, provide day-to-day support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, the SCI Support Centers have the power to hire and fire employees.

50.    Because the SCI Support Centers have authority to establish employees' work schedules and/or conditions of employment, provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employees' benefit programs, the SCI Support Centers supervise and control employees' work schedules and/or conditions of employment.

51.    Because the SCI Support Centers have authority to establish employees' rate and method of payment and centrally control payroll functions, the SCI Support Centers determine the rate and method of employees' payment.

52.    Because the SCI Support Centers play a central role in the keeping of centralized records, including a database, regarding employees' employment records, the SCI Support Centers maintain employees' employment records.

53.    For all of the foregoing reasons, among others, including the SCI Support

Centers' services and support with respect to all executive, management, administrative, accounting, data processing, and human resources services, training, and nationwide communications with employees, the SCI Support Centers provide centralized control over defendants' labor relations.

54. Because the SCI Support Centers provide day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administer employee's benefit programs, they are affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in relation to the employment of Class Members.

55. Because the SCI Support Centers are actively involved in the creation of the illegal policies complained of in this case, actively advise defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensure defendants' compliance or non-compliance with the state and common laws asserted in this action, the SCI Support Centers actively participate in the violations complained of in this action.

56. Because the SCI Support Centers, together with the SCI Cooperative, are owned by SCI, directly or indirectly, the SCI Support Centers and other defendants share common ownership.

57. Because the SCI Support Centers are subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Support Centers and other defendants share common management.

58. Because the SCI Support Centers are subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, the SCI Support Centers and other defendants share functional integration of operations.

59. Because the SCI Support Centers control the drafting and enforcement of the

C20107854

employment and human resources policies related to employees, centrally control the payroll functions related to employees' employment, provide services and support with respect to all executive, management, administrative, accounting, data processing, and human resources services, training, and nationwide communications with employees, and are subject to a network-wide single line management model, the SCI Support Centers are not completely disassociated with respect to employees' employment.

60.     The SCI Support Centers may be deemed to share control of employees, directly or indirectly, by reason of the fact that they are under common control with the SCI Cooperative and the funeral home locations because they are all owned by SCI, directly or indirectly, and because the SCI Support Centers control the drafting and enforcement of the employment and human resources policies related to Class Members, centrally control the payroll functions related to employees' employment, provide services and support with respect to all executive, management, administrative, accounting, data processing, and human resources services, training, and nationwide communications with employees, and are subject to a network-wide single line management model.

61.     Because the SCI Support Centers are part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Support Centers are an alter ego of SCI and the other entities SCI owns.

62.     Based upon the foregoing, the SCI Support Centers are liable to Class Members because of their active role in operating the business, their role in the violations complained of in this action, their status as employer, joint employer, single employer, alter ego, or otherwise according to state statutory and common law.

***The SCI Cooperative Is Liable to Class Members***

63.     The SCI Cooperative is a Delaware corporation which is owned, directly or indirectly, by SCI and the SCI Support Centers.

64.   The SCI Cooperative, through agreements with the SCI Support Centers, provides additional human resources services and support for the funeral home locations.

65.   On-site training at funeral homes and cemeteries is provided by field personnel and training departments affiliated with the SCI Cooperative.

66.   The SCI Cooperative publishes and maintains the weekly newsletter "Frontline," and the "Global Village" intranet site, publications through which defendants communicate with their nationwide employees.

67.   The SCI Cooperative administers benefits by contracting with third-party benefit providers to respond to questions related to day-to-day benefits services, such as local provider questions, access to online services, and benefits provider contact information. To the extent that those third-party providers cannot respond to questions, the SCI Cooperative will respond.

68.   The SCI Cooperative maintains a payroll department and a database that contains information on current and former employees of SCI subsidiaries.

69.   SCI and the entities it owns directly or indirectly, including the SCI Cooperative, employ a single line management model in an effort to streamline the organization and ensure that operational efficiencies are achieved throughout the SCI network.

70.   The funeral home locations that SCI owns, directly or indirectly, are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles.

71.   Upon information and belief, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

72.   Upon information and belief, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case,

including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

73.     Upon information and belief, the SCI Cooperative, due in part to its role of providing additional human resources services and support, in concert with others, actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action.

74.     Upon information and belief, the SCI Cooperative, in concert with others, plays a central role in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

75.     Upon information and belief, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents, make decisions that set employees' schedules, hours, and standard benefit levels.

76.     Upon information and belief, the SCI Cooperative, in concert with others, has the authority to, and does, through its agents, make decisions that set standard pay scales.

77.     Upon information and belief, the SCI Cooperative determines and drafts policies, answers questions regarding human resources issues and policies, resolves issues regarding policies and their application, counsels locations on human resources issues, and communicates with employees about company issues and human resources issues and policies, including issues related to hours worked and payment for such hours worked.

78.     Upon information and belief, the SCI Cooperative provides employees with information regarding benefit plans and providers, oversees the implementation and execution of benefit plans, retains ultimate authority for providing information and responding to questions regarding the benefit plans, maintains records regarding the benefit plans, makes determinations, either directly or indirectly, regarding the scope and amount of benefits available to employees, and is responsible for providing employees, directly or indirectly, with information regarding their benefits, including benefits statements and information regarding their 401(k) plans.

79.     Upon information and belief, the SCI Cooperative maintains payroll records

Ryan Turchik P.C.

regarding employees and, in concert with others, the SCI Cooperative has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

80.     Upon information and belief, the SCI Cooperative's functions in providing services and support regarding human resources, training, benefits administration, and payroll include a function maintaining and directing a single, integrated set of operations across the SCI network.

81.     Upon information and belief, the SCI Cooperative is responsible for, and subject to, centralized management directions and decisions.

82.     The SCI Cooperative is owned, directly or indirectly, by defendants SCI and the SCI Support Centers. Additionally, SCI owns the SCI Support Centers, directly or indirectly.

83.     Upon information and belief, the SCI Cooperative is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner. This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

84.     Because the SCI Cooperative has authority to hire or fire Class Members, provides day-to-day support regarding human resources issues, including the hiring and firing of Class Members, and controls the drafting and enforcement of the policies which govern the hiring and firing of employees, the SCI Cooperative has the power to hire and fire employees.

85.     Because the SCI Cooperative has authority to establish employees' work schedules and/or conditions of employment, provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, the SCI Cooperative supervises and controls employees' work schedules and/or conditions of employment.

86.     Because the SCI Cooperative has authority to establish employees' rate and

method of payment and centrally control payroll functions, the SCI Cooperative determines the rate and method of employees' payment.

87.    Because the SCI Cooperative keeps centralized records, including a database, regarding employees' employment records, the SCI Cooperative maintains employees' employment records.

88.    For all of the foregoing reasons, among others, including the SCI Cooperative's human resources services and support, training function, publication of communications across the SCI network, administration of benefit programs, and maintenance of the payroll department, the SCI Cooperative provides centralized control over defendants' labor relations.

89.    Because the SCI Cooperative provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, it is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly as it relates to the employment of Class Members.

90.    Because the SCI Cooperative is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action, the SCI Cooperative actively participates in the violations complained of in this action.

91.    Because the SCI Cooperative, together with the SCI Support Centers, is owned by SCI, directly or indirectly, the SCI Cooperative and other defendants share common ownership.

92.    Because the SCI Cooperative is subject to centralized management directions and decisions that govern the entities owned by SCI, including a single line management model applicable to the entire SCI network, the SCI Cooperative and other defendants share common management.

93.    Because the SCI Cooperative is subject to a single line management model

applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, the SCI Cooperative and other defendants share functional integration of operations.

94.    Because the SCI Cooperative controls the drafting and enforcement of the employment and human resources policies related to employees, centrally controls the payroll functions related to employees' employment, provides services and support with respect to human resources, training, and nationwide communications with employees, and is subject to a network-wide single line management model, the SCI Cooperative is not completely disassociated with respect to employees' employment.

95.    The SCI Cooperative may be deemed to share control of employees, directly or indirectly, by reason of the fact that it is under common control with the SCI Support Centers and the funeral home locations because they are all owned by SCI, directly or indirectly, and because the SCI Cooperative controls the drafting and enforcement of the employment and human resources policies related to employees, centrally controls the payroll functions related to employees' employment, provides services and support with respect to human resources, training, and nationwide communications with employees, and is subject to a network-wide single line management model.

96.    Because the SCI Cooperative is part of an extensive and complex network through which SCI promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, the SCI Cooperative is an alter ego of SCI and the other entities SCI owns.

97.    Based upon the foregoing, the SCI Cooperative is liable to Class Members because of its active role in operating the business, its role in the violations complained of in this action, its status as employer, joint employer, single employer, alter ego, or otherwise according to state statutory and common law.

**Ryan Turchik P.C.**

*SCI Is Liable to Class Members*

98.     Defendant SCI is a corporation with its headquarters at 1929 Allen Parkway, Houston, Texas 77019, which, upon information and belief, owns, directly or indirectly, at least 41 locations in Arizona, according to SCI's Annual Report filed on February 26, 2010.

99.     SCI owns, directly or indirectly, various funeral home locations in Arizona and various other companies or entities, including the SCI Cooperative and the SCI Support Centers, in a nationwide enterprise.

100.    SCI and the entities it owns directly or indirectly, including the SCI Cooperative and the SCI Support Centers, employ a single line management model in an effort to streamline the organization and ensure that operational efficiencies are achieved throughout the SCI network.

101.    The funeral home locations that SCI owns, directly or indirectly, are organized into various regions and within each region the funeral home locations share common resources including personnel, preparation services and vehicles.

102.    Upon information and belief, at all relevant times all functions at all entities in the SCI network, including the SCI Cooperative and the SCI Support Centers, reported to SCI, directly or indirectly.

103.    Upon information and belief, at all relevant times SCI maintained control and authority, directly or indirectly, over all functions at the entities in the SCI network, including the SCI Cooperative and the SCI Support Centers.

104.    Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

105.    Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning advising defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the

**Ryan Turchik P.C.**

1   On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time
2   Policy.

3      106.    Upon information and belief, SCI, in concert with others, has the authority to, and
4   does, through its agents, make decisions concerning defendants' compliance or non-compliance
5   with the state and common laws asserted in this action.

6      107.    Upon information and belief, SCI, in concert with others, has the authority to, and
7   does, through its agents, make decisions concerning reviewing and counseling defendants
8   regarding employment decisions, including hiring and firing of Class Members.

9      108.    Upon information and belief, SCI, in concert with others, has the authority to, and
10   does, through its agents, make decisions concerning employees' schedules, hours and standard
11   benefit levels.

12      109.    Upon information and belief, SCI, in concert with others, has the authority to, and
13   does, through its agents, make decisions concerning standard pay scales.

14      110.    Upon information and belief, SCI, in concert with others, has the authority to, and
15   does, through its agents, make decisions concerning the determination and drafting of policies,
16   answering questions regarding human resources issues and policies, resolving issues regarding
17   policies and their application, counseling locations on human resources issues, and
18   communicating with employees about company issues and human resources issues and policies,
19   including issues related to hours worked and payment for such hours worked.

20      111.    Upon information and belief, SCI, in concert with others, has the authority to, and
21   does, through its agents, make decisions concerning providing employees with information
22   regarding benefit plans and providers, overseeing the implementation and execution of benefit
23   plans, providing information and responding to questions regarding the benefit plans,
24   maintaining records regarding the benefit plans, making determinations, either directly or
25   indirectly, regarding the scope and amount of benefits available to employees, and providing
26   employees, directly or indirectly, with information regarding their benefits, including benefits
statements and information regarding their 401(k) plans.

112.    Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the issuance of payroll checks, directly or indirectly.

113.    SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning maintaining and directing a single, integrated set of operations across the SCI network.

114.    Upon information and belief, SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning centralized management directions and decisions.

115.    Upon information and belief, SCI is part of an extensive and complex network of corporations which SCI has created and owns in an effort to operate its nationwide locations in a unified, consistent manner.   This network promotes a fraud or injustice, in that it attempts to avoid liability for paying its common employees and prevents employees from accurately identifying their employers.

116.    Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning hiring or firing employees, providing support regarding human resources issues, including the hiring and firing of Class Members, and controlling the drafting and enforcement of the policies which govern the hiring and firing of employees, SCI has the power to hire and fire employees.

117.    Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning employees' work schedules and/or conditions of employment, providing support regarding human resources issues, including Class Members' work schedules and/or conditions of employment, controlling the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administering employees' benefit programs, SCI supervises and controls employees' work schedules and/or conditions of employment.

118.    Because SCI, in concert with others, has the authority to, and does, through its

agents, make decisions concerning employees' rate and method of payment and centrally controlling payroll functions, SCI determines the rate and method of employees' payment.

119.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning centralized records, including a database, regarding employees' employment records, SCI maintains employees' employment records.

120.   For all of the foregoing reasons, among others, including SCI's authority and exercise of authority with respect to human resources services and support, training function, publication of communications across its network, administration of benefit programs, and maintenance of the payroll department, SCI provides centralized control over defendants' labor relations.

121.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning human resources issues, including employees' work schedules and/or conditions of employment, controlling the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administering employees' benefit programs, it plays a central role in operations of defendants' business functions, particularly in regards to the employment of Class Members.

122.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning the illegal policies complained of in this case, advising of defendants' agents on the enforcement of the illegal policies complained of in this case and ensuring defendants' compliance or non-compliance with the state and common laws asserted in this action, SCI plays a central role in the violations complained of in this action.

123.   Because SCI owns, directly or indirectly, the SCI Cooperative and the SCI Support Centers, SCI and the other defendants share common ownership.

124.   Because SCI maintains and is subject to centralized management directions and decisions that govern the entities it owns, directly or indirectly, including a single line management model applicable to the entire SCI network, SCI and the other defendants share common management.

125.   Because SCI maintains and is subject to a single line management model applicable to the entire SCI network for the purpose of streamlining the organization and achieving operational efficiencies, SCI and the other defendants share functional integration of operations.

126.   Because SCI, in concert with others, has the authority to, and does, through its agents, make decisions concerning drafting and enforcing employment and human resources policies related to employees, centrally controlling the payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and is subject to a network-wide single line management model, SCI is not completely disassociated with respect to employees' employment.

127.   SCI may be deemed to share control of employees, directly or indirectly, by reason of the fact that it is under common control with the SCI Cooperative, the SCI Support Centers and the funeral home locations, all of which are owned by SCI, directly or indirectly, and because SCI plays a central role in the drafting and enforcement of the employment and human resources policies related to employees, centrally controlling the payroll functions related to employees' employment, providing services and support with respect to human resources, training, and nationwide communications with employees, and maintains and is subject to a network-wide single line management model.

128.   Because SCI maintains and is part of an extensive and complex network through which it promotes a fraud or injustice in attempting to shield from liability itself and other entities which are responsible for employees' employment and in preventing employees from accurately determining the identity of their employers, SCI is an alter ego of the other defendants and the other entities it owns.

129.   Based upon the foregoing, SCI is liable to employees because of its central role in operating the business, its role in the violations complained of in this action, its status as employer, joint employer, single employer, alter ego, or otherwise according to state statutory and common law.

Ryan Turchik P.C.

C20107854

*Jane D. Jones Is Liable to Class Members*

130.     Defendant Jane D. Jones has acted as Vice President of Human Resources for SCI since 2005.

131.     Ms. Jones oversees human resources, training and education, and payroll and commission services for approximately 20,000 employees in North America.

132.     Upon information and belief, Ms. Jones is responsible for, provides direction and control over, and is authorized to direct all aspects of human resources functions across SCI's network.

133.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

134.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

135.     Upon information and belief, due in part to her role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Ms. Jones actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action.

136.     Upon information and belief, Ms. Jones, in concert with others, is actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

137.     Upon information and belief, Ms. Jones, in concert with others, is actively involved in decisions that set employees' schedules, hours and standard benefit levels.

138.   Upon information and belief, Ms. Jones, in concert with others, is actively involved decisions that set standard pay scales.

139.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

140.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

141.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in training and education functions across SCI's network.

142.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

143.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in payroll and commission functions across SCI's network.

144.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

145.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in benefit plans across SCI's network.

146.   Upon information and belief, Ms. Jones, in concert with others, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

147.   Because Ms. Jones has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Jones has the power to hire and fire employees.

148.   Because Ms. Jones has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Jones supervises and controls employees' work schedules and/or conditions of employment.

149.   Because Ms. Jones has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Jones determines the rate and method of employees' payment.

150.   Because Ms. Jones has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Jones maintains employees' employment records.

151.   Because Ms. Jones provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Class Members.

152.   Because Ms. Jones is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701
(520) 882-7070

24

policies complained of in this case and actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action, Ms. Jones actively participates in the violations complained of in this action.

153.    Based upon the foregoing, Ms. Jones is liable to Class Members because of her active role in operating the business, her role in the violations complained of in this action, her status as an employer, or otherwise according to state statutory and common law.

*Gwen Petteway Is Liable to Class Members*

154.    Defendant Gwen Petteway is HR Director for the Corporate HR Strategic Delivery Team and prior to assuming that position, acted as Human Resources Director of SCI Houston since 2005.

155.    Ms. Petteway's job responsibilities include familiarity with the human resources services of the subsidiary and affiliate companies of SCI, as well as training and benefits provided to those companies.

156.    As Human Resources Director, Ms. Petteway's job responsibilities include providing and/or supervising day-to-day human resources services and support for defendants' funeral home locations.

157.    Upon information and belief, due in part to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

158.    Upon information and belief, due in part to her role as Human Resources Director, Ms. Petteway, in concert with others, actively, and in a central role, advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

159.    Upon information and belief, due in part to her role as Human Resources Director, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in ensuring defendants' compliance or non-compliance with the state and common laws asserted in this action.

Ryan Turchik P.C.

160. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in human resources functions across SCI's network.

161. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in day-to-day human resources services and support.

162. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Class Members.

163. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in decisions that set employee's schedules, hours and standard benefit levels.

164. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in decisions that set standard pay scales.

165. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in defendants' human resources policies, resolving issues and disputes regarding policies and their applications, counseling locations receive regarding human resources issues, providing day-to-day services and support regarding human resources issues, and communications with employees about human resources issues and policies.

166. Upon information and belief, Ms. Petteway, in concert with others, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

167. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in training and education functions across SCI's network.

168. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in decisions that determine the type and scope of training employees must attend as well as any compensation they receive for attending training.

169. Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in payroll and commission functions across SCI's network.

170. Upon information and belief, Ms. Petteway, in concert with others, is actively involved in the system for keeping and maintaining employees' payroll records, the

timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

171.   Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in defendants' benefit plans.

172.   Upon information and belief, Ms. Petteway, in concert with others, is actively involved, and plays a central role, in the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

173.   Because Ms. Petteway has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Class Members, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Ms. Petteway has the power to hire and fire employees.

174.   Because Ms. Petteway has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Ms. Petteway supervises and controls employees' work schedules and/or conditions of employment.

175.   Because Ms. Petteway has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Ms. Petteway determines the rate and method of employees' payment.

176.   Because Ms. Petteway has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Ms. Petteway maintains employees' employment records.

177.   Because Ms. Petteway is actively involved, or plays a central role, in day-to-day support regarding human resources issues, including employees' work schedules and/or

Ryan Turchik P.C.

conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, she is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Class Members.

178.    Because Ms. Petteway is actively involved, or plays a central role, in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action, she actively participates, or plays a central role, in the violations complained of in this action.

179.    Based upon the foregoing, Ms. Petteway is liable to Class Members because of her status as an employer according to state statutory and common law.

**Thomas Ryan Is Liable to Class Members**

180.    Defendant Thomas Ryan has acted as President and Chief Executive Officer of SCI since in or around 2003.

181.    Upon information and belief, Mr. Ryan's responsibilities include actively managing SCI and its network.

182.    Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the policies defendants adopt and the implementation of those policies.

183.    Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

184.    Upon information and belief, due in part to his role as President and Chief Executive Officer, Mr. Ryan is actively involved in the creation of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy, Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

185.    Upon information and belief, due in part to his role as President and Chief Executive Officer, Mr. Ryan actively advises defendants' agents on the enforcement of the illegal policies complained of in this case, including, but not limited to, the On Call Pay Policy,

Community Work Policy, Meal Break Policy and Unrecorded Work Time Policy.

186.   Upon information and belief, due in part to his role as President and Chief Executive Officer, Mr. Ryan actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action.

187.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Class Members.

188.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

189.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern standard pay scales.

190.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

191.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

192.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern training and education functions across SCI's network.

193.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

194.   Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern payroll and commission functions across SCI's network.

195.   Upon information and belief, in  concert with others, Mr. Ryan has the authority

to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

196.    Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern benefit plans across SCI's network.

197.    Upon information and belief, in concert with others, Mr. Ryan has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

198.    Because Mr. Ryan has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Class Members, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Mr. Ryan has the power to hire and fire employees.

199.    Because Mr. Ryan has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Mr. Ryan supervises and controls employees' work schedules and/or conditions of employment.

200.    Because Mr. Ryan has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Mr. Ryan determines the rate and method of employees' payment.

201.    Because Mr. Ryan has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Mr. Ryan maintains employees' employment records.

202.    Because Mr. Ryan provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Class Members.

203.    Because Mr. Ryan is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with the state and common laws asserted in this action, he actively participates in the violations complained of in this action.

204.    Based upon the foregoing, Mr. Ryan is liable to Class Members because of his active role in operating the business, his status as an employer, or according to state statutory and common law.

## IV.    CLASS ACTION ALLEGATIONS

205.    The claims arising under this complaint are properly maintainable as a class action under Rule 23 of the Arizona Rules of Civil Procedure.

206.    The class size is believed to be more than 50 current or former hourly employees.

207.    The named plaintiffs' claims are typical of, and concurrent to, the claims of Class Members, because they are similarly situated. The named plaintiffs and all Class Members were subjected to defendants' policies and practices of failing to compensate employees for all hours worked.

208.    The named plaintiffs will fairly and adequately represent and protect the interests of Class Members. The class counsel, Ryan Turchik, PC, Thomas & Solomon LLP and Margolis Edelstein, are qualified and able to litigate Class Members' claims. The class counsel are experienced in employment litigation and collective actions, and Thomas & Solomon LLP and Margolis Edelstein are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

Case 4:10-cv-00771-CKJ   Document 1-5   Filed 12/17/10   Page 32 of 51

209. There are no known conflicts of interest between and among Class Members.

210. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Each Class Member has been damaged and is entitled to recovery by reason of defendants' illegal policy and/or practice of permitting, suffering, and/or failing to timely pay employees their regular or statutorily required rate of pay for all hours worked. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

## V.   FACTUAL BACKGROUND

211. Class Members are those current and former employees of defendants who were suffered or permitted to work by defendants and not timely paid their regular or statutorily required rate of pay for all hours worked.

212. Defendants' policy and/or practice was to not compensate Class Members in a timely manner for their regular or statutorily required rate of pay for work defendants suffered or permitted Class Members to perform.

213. Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

214. Defendants' practice is to be deliberately indifferent to violations of their statutory obligation to pay Class Members for all hours worked in a timely manner.

215. The failure to properly compensate Class Members in a timely manner for all hours worked is willful.

### Community Work Policy

216. Defendants encouraged or required hourly employees who worked as Funeral Directors, Embalmers and Family Service Counselors to perform community work in order to increase revenue for defendants but did not compensate these employees for their time spent engaging in community work outside regular work hours.

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701
(520) 882-7070

32

C2010754

217.   Community involvement is a job requirement or performance dimension for the Funeral Director, Embalmer and Family Service Counselor job titles.

218.   Prior to approximately July 2007, defendants had no written policy instructing employees when to record community work.

219.   Rather, management required or encouraged Funeral Directors, Embalmers and Family Service Counselors to participate in community activities without the expectation of compensation for these activities.

220.   After July 2007, SCI implemented a written policy regarding community work instructing employees not to report their time at civic and charitable activities that are "non company sponsored" including, for example, Hospice, Rotary and Lions.

221.   As a result of the Community Work Policy, Funeral Directors, Embalmers and Family Service Counselors were required or encouraged to volunteer their time in community organizations and events in order to generate business for defendants, but were not paid for all of the time they were engaged in those activities.

**On Call Pay Policy**

222.   Defendants suffered or permitted employees to perform work by handling phone calls and other work related issues after normal business hours, but defendants would not compensate employees for all work performed.

223.   In addition, hourly employees of defendants performed removals after hours while on-call but were not compensated for the time in between taking the phone call and arriving at the funeral home to pick up the company car to go to the removal site.

**Meal Break Policy**

224.   Employees often work through their scheduled meal breaks or are interrupted during their breaks so that they do not take the full amount of time allotted for the break.

225.   Despite suffering or permitting employees to work through part or all of their meal breaks, defendants did not properly compensate employees for their missed or interrupted meal breaks in accordance with the law.

**Ryan Turchik PC**
300 N. Main Ave., #106
Tucson, AZ 85701
(520) 882-7070

33

226.   Defendants also failed to ensure that employees received all agreed upon rest and meal breaks.

***Unrecorded Work Time Policy***

227.   Defendants' policy and/or practice was to not compensate Class Members their regular or statutorily required rate of pay for work defendants suffered or permitted Class Members to perform.

228.   Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

229.   Defendants' practice is to be deliberately indifferent to violations of their statutory obligation to pay Class Members for all hours worked.

230.   The failure to properly compensate Class Members in a timely manner for all hours worked is willful.

231.   One of defendants' largest expenses is the payroll of its hourly paid employees. In order to reduce this expense and maximize profitability, defendants have maintained a policy of not paying hourly employees for all time worked and encouraging off the clock work to be performed.

232.   Defendants put pressure on management of all levels to encourage and allow hourly employees to perform off the clock work.   One of the ways defendants pressure management to encourage and allow hourly employees to perform off the clock work is by awarding management bonuses that are largely dependent on staying within the payroll budget.

***Additional Allegations***

233.   The alleged policies were not limited to overtime hours worked. Instead, employees, regardless of the number of hours worked, whether overtime or not, were not paid for all hours worked in a timely manner.

234.   Defendants also failed to make, keep and preserve adequate and accurate records of the employment of Class Members concerning their wages, hours and other conditions of employment.

235.   More specifically, the records kept by defendants failed to adequately and accurately disclose among other things, hours worked each work day, the total hours worked each work week and/or the total overtime compensation for each work week.

236.   Defendants failed to pay full compensation to Class Members who are no longer employed by defendants promptly after those Class Members were discharged, laid off or resigned. In fact, defendants' failure to fully compensate those Class Members is continuing.

## FIRST CAUSE OF ACTION

### Wage Claim Under A.R.S. § 23-355

237.   Plaintiffs re-allege the above statements as if fully restated herein.

238.   At all relevant times, Plaintiffs and Class Members were "employees" and Defendants were "employers" within the meaning of A.R.S. § 23-350.

239.   A.R.S. § 23-351 requires employers to "designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees" and to pay "all wages due the employee up to such date" on such paydays.

240.   A.R.S. § 23-351(3) provides that "overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period."

241.   Under A.R.S. § 23-353, an employer must pay all outstanding wages in full within three working days or at the end of the next regular pay period, whichever is sooner for employees who were discharged, and no later than the next regular payday for employees who quit.

242.   Defendants failed to pay Plaintiffs and Class Members all wages due as properly required under Arizona law.

243.   As a direct and proximate cause of Defendants' acts, including Defendants' failure to act in good faith, Defendants have caused Plaintiffs and Class Members to suffer damages.

244.   Pursuant to A.R.S. §23-355, an employee who is not timely paid wages owed by an employer is eligible to recover treble the  amount of unpaid wages.

Ryan Turchik P.C.

**Ryan Turchik P.C.**

## SECOND CAUSE OF ACTION

### Failure to Maintain Time Records Enforcement Action Under § 23-364

245.    Plaintiffs re-allege the above statements as if fully restated herein.

246.    A.R.S. § 23-364 requires employers to maintain payroll records showing the hours worked for each day worked, and the wages paid to all employees for a period of four years.

247.    Defendants have failed to maintain payroll records required under A.R.S. §23-364.

248.    As a direct and proximate cause of Defendants' acts, including Defendants' failure to act in good faith, Defendants have caused Plaintiffs and Class Members to suffer damages.

## THIRD CAUSE OF ACTION

### Breach of Contract

249.    Plaintiffs rc-allege the above statements as if fully restated herein.

250.    Defendants did not pay Class Members for all hours defendants suffered or permitted Class Members to work.

251.    Defendants' policy and/or practice was to not compensate Class Members for all hours worked.

252.    Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

253.    Class Members are not asserting claims under this cause of action for overtime wages recoverable under the FLSA.  However, Class Members nevertheless performed work pursuant to the policies and practices set forth herein, for which they were not compensated, regardless of whether they worked over 40 hours per week also entitling them to additional compensation under the FLSA.

254.    The alleged policies were not limited to overtime hours worked.  Instead, employees, regardless of the number of hours worked, whether overtime or not, were not paid for all hours worked.  These unpaid hours include  working on-call, performing community work,

and performing work that was not recorded, for which Class Members were not paid.

255.   By entering into an employment relationship, defendants and each Class Member entered into a contract for employment.

256.   Each such contract included an express or implied duty to pay wages as promised and to pay for all hours worked.

257.   Defendants willfully breached the express or implied contract term by failing to pay Class Members for all of the hours Class Members worked or by failing to pay Class Members wages as promised or by failing to pay for all hours worked.

258.   Defendants willfully violated their obligations under the common laws and the state laws of Arizona and are liable to Class Members.

259.   As a direct and proximate cause of defendants' breach of their contracts with Class Members, Class Members have suffered damages.

260.   Wherefore, Class Members request relief as described below.

## FOURTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

261.   Plaintiffs re-allege the above statements as if fully restated herein.

262.   Defendants did not pay Class Members for all hours defendants suffered or permitted Class Members to work.

263.   Defendants' policy and/or practice was to not compensate Class Members for all hours worked.

264.   Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

265.   Class Members are not asserting claims under this cause of action for overtime wages recoverable under the FLSA.  However, Class Members nevertheless performed work pursuant to the policies and practices set forth herein, for which they were not compensated, regardless of whether they worked over 40 hours per week also entitling them to additional compensation under the FLSA.

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701
(520) 882-7070

37

266.   The alleged policies were not limited to overtime hours worked.   Instead, employees, regardless of the number of hours worked, whether overtime or not, were not paid for all hours worked.   These unpaid hours include working on-call, performing community work, performing work during meal and rest breaks and performing work that was not recorded, for which Class Members were not paid.

267.   The unwritten contract for at-will employment between Class Members and defendants contained an implied covenant of good faith and fair dealing, which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would deprive Class Members of the benefits of the contract.

268.   Defendants breached the implied covenant of good faith and fair dealing by failing to pay Class Members the wages for all hours worked.

269.   Defendants willfully violated their obligations under the common laws and the state laws of Arizona and are liable to Class Members.

270.   As a direct and proximate cause of defendants' breach of the implied covenant of good faith and fair dealing, Class Members have suffered damages.

271.   Wherefore, Class Members request relief as described below.

### FIFTH CAUSE OF ACTION

#### Fraud

272.   Plaintiffs re-allege the above statements as if fully restated herein.

273.   Defendants did not pay Class Members for all hours defendants suffered or permitted Class Members to work.

274.   Defendants' policy and/or practice was to not compensate Class Members for all hours worked.

275.   Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

276.   Class Members are not asserting claims under this cause of action for overtime

wages recoverable under the FLSA. However, Class Members nevertheless performed work pursuant to the policies and practices set forth herein, for which they were not compensated, regardless of whether they worked over 40 hours per week also entitling them to additional compensation under the FLSA.

277. The alleged policies were not limited to overtime hours worked. Instead, employees, regardless of the number of hours worked, whether overtime or not, were not paid for all hours worked. These unpaid hours include working on-call, performing community work, performing work performed during meal and rest breaks and performing work that was not recorded, for which Class Members were not paid.

278. Defendants, through their corporate publications and through statements of their agents, represented that Class Members would be paid for all hours worked. For example, defendants falsely stated in their policy manuals "[n]on-exempt associates are paid on an hourly basis for all work controlled or required by the employer[.]"

279. Defendants, however, despite making this representation to Class Members, at all times, never intended to, and did not, pay Class Members for all hours worked.

280. Defendants were experienced in Human Resources issues, including issues regarding wage and hour requirements, including those alleged herein, and as part of that experience had and maintained Human Resources functions and employees, conducted Human Resources training, and periodically reviewed their Human Resources policies for legal compliance.

281. Defendants held themselves out, to Class Members and others, as knowing and being experienced with the legal issues pertaining to wage and hour requirements, including those alleged herein.

282. Defendants made express statements to Class Members recognizing their obligation to pay Class Members for all hours worked and stating that they would do so. For example, defendants' policy manuals falsely stated that defendants would pay for "all work."

283. However, despite their knowledge of the relevant law, defendants did not pay, as

they had promised they would, for all hours worked.

284.   Examples of types of work Class Members performed but were not paid for include working on-call, performing community work, performing work during meal and rest breaks and performing work that was not recorded.

285.   Defendants knew or had reasonable grounds for believing their statements to be false because they knew they failed and refused to pay Class Members for all hours worked.

286.   These misrepresentations were material to the terms of Class Members' employment contracts, and Class Members relied on the misrepresentations in agreeing to accept and continue employment with defendants. This reliance was reasonable, as Class Members had every right to believe that defendants would abide by their own statements and representations.

287.   Defendants willfully violated their obligations by committing fraud against Class Members under the common laws and the state laws of Arizona.

288.   As a direct and proximate cause of the fraud committed by defendants, Class Members did not receive compensation for all hours worked and suffered damages.

289.   Defendants acted maliciously when they committed the wrongful acts which constitute this cause of action such that it warrants the imposition of punitive and exemplary damages.

290.   Wherefore, Class Members request relief as described below.

## SIXTH CAUSE OF ACTION

### Conversion

291.   Plaintiffs re-allege the above statements as if fully restated herein.

292.   Defendants did not pay Class Members for all hours defendants suffered or permitted Class Members to work.

293.   Defendants' policy and/or practice was to not compensate Class Members for all hours worked.

294.   Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

295.   Class Members are not asserting claims under this cause of action for overtime wages recoverable under the FLSA.   However, Class Members nevertheless performed work pursuant to the policies and practices set forth herein, for which they were not compensated, regardless of whether they worked over 40 hours per week also entitling them to additional compensation under the FLSA.

296.   The alleged policies were not limited to overtime hours worked.   Instead, employees, regardless of the number of hours worked, whether overtime or not, were not paid for all hours worked.   These unpaid hours include working on-call, performing community work, performing work during meal and rest breaks and performing work that was not recorded, for which Class Members were not paid.

297.   At all relevant times, defendants had and continue to have a legal obligation to pay Class Members all wages due for all hours worked, as described above.   The wages belong to Class Members as of the time the labor and services were provided to defendants and, accordingly, the wages for services performed are the property of the Class Members.

298.   In refusing to pay all wages due to Class Members for all hours worked, defendants knowingly, unlawfully and intentionally took, appropriated and converted the wages earned by Class Members for defendants' own use, purpose and benefit.   At the time the conversion took place, Class Members were entitled to immediate possession of the amount of wages earned.   As a result, Class Members have been denied the use and enjoyment of their property and have been otherwise damaged in an amount to be proven at trial.   This conversion was willful, oppressive, malicious, and fraudulent and/or done with conscious disregard of the rights of the Class Members.   This conversion was concealed from Class Members.

299.   Defendants willfully violated their obligations under the common laws and the state laws of Arizona.

300.   As a result of defendants' actions, Class Members were damaged and are entitled to all funds converted by defendants with interest thereon, all profits resulting from such conversion, and punitive or exemplary damages.

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701
(520) 882-7070

41

301.   Wherefore, Class Members request relief as described below.

### SEVENTH CAUSE OF ACTION

#### Unjust Enrichment/Restitution

302.   Plaintiffs re-allege the above statements as if fully restated herein.

303.   The preceding paragraphs are incorporated as if fully set forth herein.

304.   Defendants did not pay Class Members for all hours defendants suffered or permitted Class Members to work.

305.   Defendants' policy and/or practice was to not compensate Class Members for all hours worked.

306.   Defendants knew Class Members were supposed to receive such wages, however, defendants willfully failed to pay for all hours when Class Members worked.

307.   Class Members are not asserting claims under this cause of action for overtime wages recoverable under the FLSA.  However, Class Members nevertheless performed work pursuant to the policies and practices set forth herein, for which they were not compensated, regardless of whether they worked over 40 hours per week also entitling them to additional compensation under the FLSA.

308.   The alleged policies were not limited to overtime hours worked. Instead, employees, regardless of the number of hours worked, whether overtime or not, were not paid for all hours worked.  These unpaid hours include working on-call, performing community work, performing work during meal and rest breaks and performing work that was not recorded, for which Class Members were not paid.

309.   Defendants have received financial gain at the expense of Class Members.

310.   Defendants have received that financial gain under such circumstances that, in equity and good conscience, defendants ought not to be allowed to profit at the expense of Class Members.

311.   Defendants' willful failure to pay Class Members for all work performed for defendants pursuant to the policies and practices described herein, has unjustly enriched

defendants to the detriment of Class Members.

312.   As a result of defendants' conduct, the common laws and state laws of Arizona, imply a contract obligating defendants to make restitution to Class Members, in the amount by which, in equity and good conscience, defendants have been unjustly enriched.

313.   As a direct and proximate cause of defendants' actions, Class Members have suffered damages.

314.   Wherefore, Class Members request relief as described below.

## EIGHTH CAUSE OF ACTION

### Misrepresentation

315.   Plaintiffs re-allege the above statements as if fully restated herein.

316.   In particular, Class Members incorporate and refer to paragraphs 271 through 289 above, regarding the material misrepresentations made by defendants.

317.   When defendants hired Class Members, they represented to Class Members that they would be fully compensated for all services performed, as more fully set forth above.

318.   There was no reasonable basis for defendants to believe these representations because defendants had a continuing practice and policy of failing to pay their employees for all hours worked.

319.   Class Members relied upon defendants' representations by performing work and services for defendants.  This reliance was reasonable, as Class Members had every right to believe that defendants would compensate Class Members for all hours worked.

320.   Defendants willfully violated their obligations under the common laws and the state laws of Arizona.

321.   As a result of their reliance upon defendants' misrepresentations, Class Members suffered damages because they were not appropriately compensated with the regular or statutorily required rate of pay for all hours worked.

322.   As a direct and proximate result of defendants' negligent misrepresentation, Class Members suffered damages.

Ryan Turchik P.C.

323.   Defendants' willful and wanton actions, jointly and individually, demonstrate malice, aggravated or egregious fraud and oppression, with a conscious disregard for the rights of other persons that with a great probability of causing substantial harm, Plaintiffs and Class Members are entitled to punitive damages.

324.   Wherefore, Class Members request relief as described below.

## PRAYER FOR RELIEF

WHEREFORE, Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a) certification of this case as a class action;

(b) an order permanently restraining defendants from engaging in the aforementioned pay violations;

(c) an award of the value of the Class Members' unpaid wages, including fringe benefits;

(d) an award of treble damages;

(e) an award of punitive damages;

(f) an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiff's rights under A.R.S. § 12-341.01;

(g) an award of pre- and post- judgment interest, and

(h) such other and further legal or equitable relief as this Court deems to be just and appropriate.

DATED this 5th day of October, 2010.

RYAN TURCHIK, P.C.

Merle Joy Turchik
Mary Judge Ryan
Attorneys for Plaintiffs

CDO107854

**Ryan Turchik P.C.**

**THOMAS & SOLOMON LLP**

_____

J. Nelson Thomas (*pro hac vice admission anticipated*)
Annette Gifford (*pro hac vice admission anticipated*)
Sarah Cressman (*pro hac vice admission anticipated*)
Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701
(520) 882-7070

Merle Joy Turchik, SBA 011130
Mary Judge Ryan, SBA 011692
RYAN TURCHIK P.C.
300 North Main Ave., Suite 106
Tucson, AZ 85701
Telephone: (520) 882-7070
Facsimile: (520) 882-7091
Email: merle@ryanturchik.com
mary@ryanturchik.com

J. Nelson Thomas, N.Y. State Bar 2579159 (*pro hac vice admission anticipated*)
Annette Gifford, N.Y. State Bar # 4105870 (*pro hac vice admission anticipated*)
Sarah Cressman, N.Y. State Bar # 4014379 (*pro hac vice admission anticipated*)
**THOMAS & SOLOMON LLP**
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
Facsimile: (585) 272-0574
Email: nthomas@theemploymentattorneys.com
agifford@theemploymentattorneys.com
scressman@theemploymentattorneys.com

Attorneys for: **Plaintiffs**

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF PIMA

**C20107854**

| | |
|---|---|
| FRANK ACUNA, DEE ADAMS, ALEXIS LONG AND RICHARD MCKEEMAN, *on behalf of themselves and all other employees similarly situated,*<br><br>    *Plaintiffs,*<br><br>    v.<br><br>SERVICE CORPORATION INTERNATIONAL, SCI FUNERAL AND CEMETERY PURCHASING COOPERATIVE, INC., SCI WESTERN MARKET SUPPORT CENTER, L.P. a/k/a SCI WESTERN MARKET SUPPORT CENTER, INC., JANE D. JONES, GWEN PETTEWAY, and THOMAS RYAN, ABC CORPS 1-10; JOHN and JANE DOES 1-10;<br><br>    *Defendants.* | Case No.:<br><br><br>**SUMMONS**<br><br>Ted B. Borek |

1

The State of Arizona to:   Jane Jones
1929 Allen Parkway
Houston TX 77019

You are hereby summoned and required to appear and defend, within the time applicable, in this action in this court. If served within Arizona, you shall appear and defend within TWENTY DAYS of service of the summons and complaint upon you, exclusive of the day of service or, if served outside the State of Arizona ,within THIRTY DAYS, exclusive of the day of service.

You are hereby notified that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the complaint.

If you do not want Judgment taken against you for the relief demanded in the accompanying Complaint you must file an Answer in writing in the Office of the Superior Court, accompanied by the necessary filing fee. A copy of the Answer must also be mailed to the attorney for the plaintiff:

Merle Joy Turchik
RYAN TURCHIK, P.C.
300 North Main Ave. Ste 106
Tucson, Arizona 85701

This is a legal document. If you do not understand its consequences, you should seek the advice of an attorney.

Request for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

SIGNED AND SEALED this ___ day of __OCT  5 2010__ , 2010.

Clerk of the Superior Court

PATRICIA A. NOLAND

By:_____

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701

2

*Ryan Turchik P.C.*

1  Merle Joy Turchik, SBA 011130
   Mary Judge Ryan, SBA 011692
2  RYAN TURCHIK P.C.
   300 North Main Ave., Suite 106
3  Tucson, AZ 85701
   Telephone: (520) 882-7070
4  Facsimile: (520) 882-7091
5  Email: merle@ryanturchik.com
   mary@ryanturchik.com
6
7  J. Nelson Thomas, N.Y. State Bar 2579159 (*pro hac vice admission anticipated*)
   Annette Gifford, N.Y. State Bar # 4105870 (*pro hac vice admission anticipated*)
8  Sarah Cressman, N.Y. State Bar # 4014379 (*pro hac vice admission anticipated*)
   **THOMAS & SOLOMON LLP**
9  693 East Avenue
   Rochester, New York 14607
10 Telephone: (585) 272-0540
   Facsimile: (585) 272-0574
11 Email: nthomas@theemploymentattorneys.com
   agifford@theemploymentattorneys.com
12 scressman@theemploymentattorneys.com
13
   Attorneys for: **Plaintiffs**
14
15         IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
16              IN AND FOR THE COUNTY OF PIMA

**C20107854**

17
18 FRANK ACUNA, DEE ADAMS, ALEXIS LONG          Case No.:
   AND RICHARD MCKEEMAN, *on behalf of themselves*
19 *and all other employees similarly situated,*
20        *Plaintiffs,*                              **SUMMONS**
21             v.                                  Ted B. Borek
22 SERVICE CORPORATION INTERNATIONAL, SCI
   FUNERAL AND CEMETERY PURCHASING
23 COOPERATIVE, INC., SCI WESTERN MARKET
   SUPPORT CENTER, L.P. a/k/a SCI WESTERN
24 MARKET SUPPORT CENTER, INC., JANE D.
   JONES, GWEN PETTEWAY, and THOMAS RYAN,
25 ABC CORPS 1-10; JOHN and JANE DOES 1-10;
26
        *Defendants.*

1

The State of Arizona to:      Gwen Petteway
                              1929 Allen Parkway
                              Houston TX 77019

    You are hereby summoned and required to appear and defend, within the time applicable, in this action in this court. If served within Arizona, you shall appear and defend within TWENTY DAYS of service of the summons and complaint upon you, exclusive of the day of service or, if served outside the State of Arizona ,within THIRTY DAYS, exclusive of the day of service.

    You are hereby notified that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the complaint.

    If you do not want Judgment taken against you for the relief demanded in the accompanying Complaint you must file an Answer in writing in the Office of the Superior Court, accompanied by the necessary filing fee. A copy of the Answer must also be mailed to the attorney for the plaintiff:

                    Merle Joy Turchik
                    RYAN TURCHIK, P.C.
                    300 North Main Ave. Ste 106
                    Tucson, Arizona 85701

    This is a legal document. If you do not understand its consequences, you should seek the advice of an attorney.

    Request for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

        SIGNED AND SEALED this ____ day of ___OCT  5 2010___, 2010.

                        Clerk of the Superior Court

                        PATRICIA A. NOLAND

                        By:_____

Ryan Turchik P.C.

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701
(520) 882 7070

2

1  Merle Joy Turchik, SBA 011130
   Mary Judge Ryan, SBA 011692
2  **RYAN TURCHIK P.C.**
   300 North Main Ave., Suite 106
3  Tucson, AZ 85701
   Telephone: (520) 882-7070
4  Facsimile: (520) 882-7091
5  Email: merle@ryanturchik.com
   mary@ryanturchik.com
6
   J. Nelson Thomas, N.Y. State Bar 2579159 (*pro hac vice admission anticipated*)
7  Annette Gifford, N.Y. State Bar # 4105870 (*pro hac vice admission anticipated*)
   Sarah Cressman, N.Y. State Bar # 4014379 (*pro hac vice admission anticipated*)
8  **THOMAS & SOLOMON LLP**
9  693 East Avenue
   Rochester, New York 14607
10 Telephone: (585) 272-0540
   Facsimile: (585) 272-0574
11 Email: nthomas@theemploymentattorneys.com
12 agifford@theemploymentattorneys.com
   scressman@theemploymentattorneys.com
13
   Attorneys for: **Plaintiffs**
14
15            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
16                  IN AND FOR THE COUNTY OF PIMA
17                                                  **C20107854**
18 FRANK ACUNA, DEE ADAMS, ALEXIS LONG          Case No.:
   AND RICHARD MCKEEMAN, *on behalf of themselves*
   *and all other employees similarly situated,*
19
                                                  **SUMMONS**
20       *Plaintiffs,*
                                                  Ted B. Borek
21          v.
22 SERVICE CORPORATION INTERNATIONAL, SCI
   FUNERAL AND CEMETERY PURCHASING
23 COOPERATIVE, INC., SCI WESTERN MARKET
   SUPPORT CENTER, L.P. a/k/a SCI WESTERN
24 MARKET SUPPORT CENTER, INC., JANE D.
   JONES, GWEN PETTEWAY, and THOMAS RYAN,
25 ABC CORPS 1-10; JOHN and JANE DOES 1-10;
26
        *Defendants.*

1

1

The State of Arizona to:        Thomas Ryan
                                1929 Allen Parkway
2                               Houston TX 77019

3

    You are hereby summoned and required to appear and defend, within the time applicable,
4    in this action in this court. If served within Arizona, you shall appear and defend within
TWENTY DAYS of service of the summons and complaint upon you, exclusive of the day of
5    service or, if served outside the State of Arizona ,within THIRTY DAYS, exclusive of the day of
service.
6

7        You are hereby notified that in case of your failure to appear and defend within the time
applicable, judgment by default may be rendered against you for the relief demanded in the
8    complaint.

9
    If you do not want Judgment taken against you for the relief demanded in the
accompanying Complaint you must file an Answer in writing in the Office of the Superior Court,
10   accompanied by the necessary filing fee. A copy of the Answer must also be mailed to the
attorney for the plaintiff:
11

12                                  Merle Joy Turchik
                                    RYAN TURCHIK, P.C.
13                                  300 North Main Ave. Ste 106
                                    Tucson, Arizona 85701
14

15       This is a legal document. If you do not understand its consequences, you should seek the
advice of an attorney.
16

17       Request for reasonable accommodation for persons with disabilities must be made to the
court by parties at least 3 working days in advance of a scheduled court proceeding.
18

19       SIGNED AND SEALED this ____ day of OCT  5 2010 _____, 2010.

20                                  Clerk of the Superior Court

21                                  PATRICIA A. NOLAND

22

23   By:_____

24

25

26

Ryan Turchik PC
300 N. Main Ave., #106
Tucson, AZ 85701

2